[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This decision concludes phase two of a bifurcated proceeding. In phase one, the issue was whether the defendant, Commissioner of Revenue Services ("commissioner") could impose a deficiency sales and use tax assessment plus penalty on the plaintiff for the period July 1983 through February 1989 (the "closed period"). The plaintiff had protested the deficiency assessment and penalty for this period because of General Statutes § 12-415 (7), which recites that "[e]xcept in the case of fraud . . . every notice of deficiency assessment shall be mailed within three years after the last day of the month following the period for which the amount is proposed to be assessed or within three years after the return is filed, whichever period expires later." The commissioner acknowledged that the notice of the deficiency assessment and penalty was beyond the three year limitation period, but argued in the first phase that the plaintiff committed fraud upon the state in regard to the sales and use tax collection during the closed period. On that issue, we held CT Page 15521 that the commissioner failed to meet his burden of proving fraud on the part of the plaintiff with respect to tax and penalty he sought to collect for the closed period.
In the present second phase, the commissioner seeks to levy a deficiency sales and use tax assessment and a 25% penalty on the plaintiff for the period from February 28, 1989 through March 31, 1992 (the "open period").
The commissioner makes the same argument for the open period as he did in the first phase. The commissioner argues that because the plaintiff acknowledged that he committed fraud in dealing with the Internal Revenue Service (IRS) and entered into a settlement of all federal tax liabilities with the IRS to pay $15,000,000 in taxes, interest and penalties for the period 1981 through 1991, the plaintiff has also committed fraud with respect to state sales and use tax. We stated in our prior memorandum of decision dated April 19, 2000: "The $15,000,000 was arrived at by the U.S. Attorney's office, the IRS and Leonard's attorney. One of the factors in arriving at the settlement was the consideration of the sentencing guidelines. The IRS used a computer program to input various factors to arrive at a final number. The factors were not based upon any records of the Stew Leonard's Dairy ("Dairy"). The $15,000,000 amount was basically an arbitrary figure. For the sake of numbers, the IRS used $1,250,000 as an allocation of additional individual yearly income to Leonard. This amount was not based upon the actual receipt of excess money by the Dairy for the years in issue, but was an agreed-upon figure for settlement purposes." (April 19, 2000 Memorandum of Decision, p. 2.)
The commissioner argues that Michael O'Sullivan, a tax appellate officer, made an analysis of whether the Dairy's sales tax was affected by the fraudulent activities directed to lower federal taxes. O'Sullivan analyzed a one week period of the Dairy's current week activity reports before the application of the Equity Program and one week after to determine what would have been the sales tax collected for that week.[1]
O'Sullivan was of the opinion that there were unexplained discrepancies. O'Sullivan attributes these unexplained discrepancies to the fraudulent Equity Program.
It is difficult for us to accept the credibility of this analysis based upon a tax appellate officer's[2] conclusion that there are unexplained discrepancies in the taxpayer's records. There is no report of a state tax department auditor documenting a deficiency in the payment of the sales tax, or an analysis by the auditor of the one week current activity report and its significance. What we do have is the position of the commissioner that because of the fraud perpetrated by the plaintiff CT Page 15522 against the IRS, he must have also defrauded the state.
In this second phase, the commissioner seeks to use the $1,250,000 IRS settlement allocation of yearly income to the plaintiff as a basis to levy a deficiency assessment for state sales and use taxes for the years 1989 through 1992. The commissioner claims that since he has levied a sales tax deficiency assessment against the plaintiff, the plaintiff bears the burden of proving the deficiency assessment is in error. SeeH. B. Sanson, Inc. v. Tax Commissioner, 187 Conn. 581, 586, 447 A.2d 12
(1982) (burden of proving an error in a deficiency assessment is on the plaintiff). Burden of proof breaks down into "two separate and different burdens: (1) the risk of not persuading the trier of fact, or the burden of persuasion; and (2) the risk of not producing evidence, or the burden of going forward." (Citations omitted; internal quotation marks omitted.)Janow v. Ansonia, 11 Conn. App. 1, 9, 525 A.2d 966 (1987).
We note that the federal government charged the plaintiff and his associates with fraudulently altering records upon which federal partnership tax returns were based, yet there is no record that any similar state criminal charges were instituted against the plaintiff or his associates in connection with the commissioner's claim that sales tax records were altered or destroyed. See General Statutes § 12-428. In addition to not charging the plaintiff with any criminal activity, the commissioner would, by using the IRS settlement as its basis for levying a sales tax deficiency, impose a burden upon the plaintiff to prove the non-existence of altered or destroyed records. We question this syllogistic reasoning to support the commissioner's claim that the plaintiff has the burden of proof to show that he did not alter or destroy sales tax records when in fact no evidence exists to support the commissioner's contention that the plaintiff's fraud on the federal level is proof that there is fraud on the state level. Cf. State v. Daniels,207 Conn. 374, 390, 542 A.2d 306 (1988).
We previously found that the plaintiff made payments to the commissioner of $91,233 and $81,751 for additional sales and use tax based on agreed-upon adjustments for the open period. In March 1996, the commissioner issued a notice of assessment of sales and use tax against the plaintiff for the period from July 1983 through March 1992 showing a total assessment of $1,402,514.42, composed of $511,821.15, plus a penalty of $148,414.99 and interest of $742,278.10 computed through March 31, 1996. After deducting the amounts attributable to the closed period, the plaintiff contests in this phase the validity of the commissioner's assessment of sales tax on additional gross receipts for the open period of $38,529.73, plus interest, and $48,651.54 fraud penalty imposed on the assessment for the open period, plus interest. (See July 6, 2000 Stipulation of Facts, ¶ 7.) The commissioner still bases his CT Page 15523 deficiency assessment and fraud penalty against the plaintiff for the open period on the settlement agreement made between the plaintiff and the IRS that reflected an additional yearly income of $1,250,000 for ten years for the purpose of federal income taxes. We found, in our prior decision in this case: "The revenue examiner used the settlement figures of the IRS because the IRS had possession of all off the records of the Dairy that would be needed to conduct an actual audit, such as sales journals, daily reports, and cash receipt tapes. The IRS would not release these records to the DRS." (April 19, 2000 Memorandum of Decision, p. 5.) We note that a year and a half has passed since the issuance of our last memorandum and the commissioner apparently still has not obtained access to the plaintiff's records. The commissioner continues to rely on the IRS settlement agreement for his claim that additional sales taxes plus penalty are owed, even though the commissioner stipulated that an additional sales and use tax deficiency of $172,984 ($91,233 plus $81,751) was paid by agreement with the plaintiff for the open period. Two IRS special agents testified at the trial in this case that the they did not believe that the state sales tax information was altered by the plaintiff when it ran the Equity Program to alter amounts of the Dairy's bank deposits. (See April 19, 2000 Memorandum of Decision, p. 4.)
It is necessary to repeat the facts previously found with regard to the plaintiff's records dealing with the sales and use tax returns for the years in question as follows: "The preparation of the Dairy's Connecticut sale and use tax returns were made by the Dairy's controller. The controller was not a participant in the Equity Program and was not aware of its existence. The computerized scanning cash registers, at the point of sale, scanned each sale for taxable items and the collection of the sales tax. The scanners picked up five primary areas of sales information collected from each bar code: units sold, retail dollars sold, cost dollars sold, retail discount dollars sold, and retail discount units sold. This information, along with the sales tax collected, was automatically transmitted from the computerized cash registers into the point of sales system's computer data base. For each of the monthly sales tax periods at issue in this action, Dairy filed with DRS a sales and use tax return, and paid the tax shown to be due on the return. The sales tax figures were taken from these unaltered records located in the financial file."
"The basic difference in concepts used by the Commissioner and the Dairy is that the Commissioner computed the Dairy's sales and use tax obligation by taking the IRS settlement figure, less deductions, and multiplying that by the sales tax percentage to arrive at the amount of tax due. The Dairy, on the other hand, collected the sales tax at the point of sale and based its computation of its sales and use tax reports CT Page 15524 to the DRS on the total amount of sales taxes collected." (April 19, 2000 Memorandum of Decision, pp. 5-6.)
Although we found that there was substantial understatement of the gross receipts on the plaintiff's federal partnership returns and under reporting of the plaintiff's federal income and tax liabilities on his personal income tax returns, we further found: "The Commissioner has not presented any concrete evidence substantiating the claim of fraud committed by the plaintiff with respect to the sales and use tax figures reported in the Dairy's state sales and use tax returns." (April 19, 2000 Memorandum of Decision, p. 10.) The commissioner claims, in its brief for phase two, that because the plaintiff fraudulently altered and destroyed the business records, the plaintiff cannot show that the commissioner's deficiency assessment based upon the IRS agreement was erroneous. While there is no question that the plaintiff and his associates altered business records to change the amount of gross receipts reported for federal income tax purposes, there was no evidence presented before this court that the plaintiff altered or destroyed any business records involving the reporting or collection of the Connecticut sales tax. We understand the commissioner's position that the burden of showing that the plaintiff did not alter or destroy the records relating to the sales tax is on the plaintiff. However, the commissioner's claim is based on the IRS settlement with the plaintiff that spans, in part, the years 1983 to 1989. We previously concluded that the commissioner could not levy additional deficiencies against the plaintiff for this period of time due to the statute of limitations barring the commissioner from collecting any additional taxes or penalties from 1983 to 1989.
We find from the above analysis that the plaintiff has met his burden of showing that the Commissioner's reliance on an arbitrary settlement agreement with the IRS cannot be the basis for the commissioner to impose a sales tax deficiency or fraud penalty for the open period from February 28, 1989 to March 31, 1992. Since we have previously decided that the commissioner failed to substantiate his claims of fraud with respect to the closed period, the plaintiff's appeal is sustained as to both the open and closed periods, without costs to either party.
Arnold W. Aronson Judge Trial Referee